IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGE PARTNERS, a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>CITIBANK N.A., a national banking association, JPMorgan Chase Bank, N.A., a national banking association, and DOES 1-50, inclusive,<br><br>  Defendants.<br>_____ / | No. C 12-03048 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION; GRANTING LEAVE TO FILE AMENDED COMPLAINT** |

  Fraudsters in Russia, Eastern Europe, or the Middle East hacked into plaintiff's computer system and used the information to cause River City Bank in California to wire funds from plaintiff's bank account to accounts belonging to certain foreign banks at defendant banks Citibank, N.A., and JPMorgan Chase Bank, N.A. After the funds were received by Citibank and Chase, the accounts belonging to the foreign banks were credited and notices were sent to those foreign banks advising of the credit with notices identifying the customer of the foreign bank for whom the funds were ultimately intended.

  A TRO was issued herein on June 14, 2012. The TRO restrained Citibank and Chase from "transferring, moving, withdrawing, or in any way diverting funds" from the subject bank accounts at Citibank and Chase. It now turns out, however, that after the account notices were sent to the foreign banks, those foreign banks withdrew more from their accounts at Citibank and Chase than the amounts of the wired deposits in question. On the other hand, as of the date of the TRO, the balances in those accounts owned by the foreign banks at Citibank and Chase exceeded the fraudulent wires in question and, since the TRO has been honored, the balances are

still adequate to cover the fraudulent amounts. The TRO has been maintained for several months in order to allow for discovery and to submit supplemental evidence, particularly concerning how the system works. A long hearing was held on September 27.

There is no doubt that plaintiff will have no fund against which to proceed in the event that the restraining order is dissolved, such that its recovery of money allegedly transferred without authorization will likely be more difficult. That, however, is not the only important consideration. Considerable effort has gone into tracing the flow of funds and it is quite clear now, on the merits, that the fraudsters managed to withdraw the funds from overseas accounts, receiving payouts from the foreign banks. To repeat, before the TRO issued, the foreign banks had moved more than the amounts in question from the accounts in question and did so in presumed reliance on the notifications by then already sent. That the balances are still large enough to cover the fraud is beside the point. Once the account notifications were sent, we must presume reliance thereon, especially where the recipients of the notices — here, the foreign banks — withdrew more than the amounts of those notices from their accounts at Citibank and Chase.

Citibank and Chase are not accused of doing anything wrong. Instead, plaintiff's theory is that Citibank and Chase are innocent holders of the funds and that a constructive trust can be imposed on the banks (and the funds) pending proof of the wrongdoing.

If the money were still in the accounts, this would be a possibility. But the money has departed from the accounts in amounts greater than the credits in question — and did so before the TRO. While it is true that some funds are left in the accounts, we should not presume, as plaintiff's theory suggests, that the last funds removed will be the fraudulent amounts. This theory has no support in the law and would disrupt the international banking system according to the proof on this motion. Rather, the more sound banking rule must treat the stolen amounts as beyond the reach of an injunction once the notification was sent to the foreign bank and the foreign bank in fact withdrew funds in amounts equal to or in excess of the notification.

This action involves wire transfers. Citibank and Chase contend that Article 4A of the Uniform Commercial Code, adopted as Division 11 of the California Uniform Commercial

2

Code, applies here to prohibit enjoining them with respect to the funds transfer. The official comments to UCC Section 4A–102, adopted in California as Section 11102, state that in drafting Article 4A, "a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability . . . ." Moreover, where it applies, the statute displaces other common law remedies and claims for relief "(1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 253 (2007).

The Commercial Code sets forth an extensive statutory scheme that governs funds transfers. Key terms are defined therein (CAL. COM. CODE §§ 11103, 11104):

> "Originator" means the sender of the first payment order in a funds transfer.
>
> "Originator's bank" means (i) the receiving bank to which the payment order of the originator is issued if the originator is not a bank, or (ii) the originator if the originator is a bank.
>
> "Beneficiary" means the person to be paid by the beneficiary's bank.
>
> "Beneficiary's bank" means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account.
>
> "Intermediary bank" means a receiving bank other than the originator's bank or the beneficiary's bank.

Section 11503 provides that injunctions may issue only in the following circumstances:

> For proper cause and in compliance with applicable law, a court may restrain (i) a person from issuing a payment order to initiate a funds transfer, (ii) an originator's bank from executing the payment order of the originator, or (iii) the beneficiary's bank from releasing funds to the beneficiary or the beneficiary from withdrawing the funds. A court may not otherwise restrain a person from issuing a payment order, paying or receiving payment of a payment order, or otherwise acting with respect to the funds transfer.

3

Except for the restraints provided for in Section 11503, a court should not enjoin a person or bank from "otherwise acting with respect to the funds transfer." The UCC official comments further explain that this provision is "designed to prevent interruption of a funds transfer after it has been set in motion. . . . In particular, intermediary banks are protected. . . ." Citibank and Chase contend that they are intermediary banks within the meaning of the statute, such that they cannot be enjoined in any way. The banks further argue that, even if they are considered to be beneficiary's banks in the transactions at issue, payment has already occurred and the funds have been released.

    To the extent that the UCC applies to the transactions at issue, or portions thereof, an injunction should not lie where Citibank and Chase were functioning as intermediary banks. In that case, Citibank and Chase should not be enjoined from executing a payment order to the beneficiary's bank (the foreign bank), who would then be instructed to pay the beneficiary of the funds transfer (the overseas fraudster). This order need not decide whether Citibank and Chase are intermediary banks. Even if the banks are considered beneficiary's banks within the meaning of the statute, payment of the funds at issue occurred when Citibank and Chase credited the accounts of the foreign banks and provided notice of the availability of the funds. Because the account holders (the foreign banks) subsequently withdrew or transferred amounts in excess of the credited amounts in reliance thereon prior to the issuance of the TRO, a further injunction would be ineffective and should not be imposed. Put differently, after considerable discovery and argument, it is clear that plaintiff has little or no probability of success on the ultimate merits.

    This order is, of course, without prejudice to plaintiff's right to recover from River City Bank.

    \*        \*        \*        \*

    Plaintiff seeks leave to file an amended complaint. The proposed complaint removes the doe defendants and adds as defendants the foreign banks who received funds via the allegedly unauthorized transfers. Defendants Citibank and Chase oppose plaintiff's motion, contending that the proposed claims for conversion and declaratory relief are futile. Defendants' opposition

4

briefs improperly focus, however, on declarations and materials outside the pleadings. Plaintiff's motion for leave to file an amended complaint is hereby **GRANTED**. This order makes no findings regarding whether personal jurisdiction over any defendant is proper, or the proper means of effectuating service. The Court has also considered whether the amendment should affect the calculus on the preliminary injunction issue and, after supplemental briefing thereon, has concluded that it should not change the analysis vis-a-vis Citibank and Chase.

Plaintiff's motion for a preliminary injunction is **DENIED**. The effectiveness of this order shall be stayed (and the TRO shall remain in effect) until **NOON ON OCTOBER 31, 2012**, so that plaintiff may apply to the court of appeals for further relief. Thereafter, the TRO herein shall expire without further order by this Court.

**IT IS SO ORDERED.**

Dated: October 17, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE